I guess it is actually Gloria Ortiz versus Graciela Ortiz. So you're representing Gloria Ortiz, yes? That's correct, Your Honor. I'm Robert Foster for Gloria Ortiz. With Life Insurance Company being an interpreter, right? That's correct. Okay, you may proceed. Your Honor, it's clear from the record that there was no oral agreement waiving the insurance beneficiary designations. In fact, the evidence is... Didn't the divorce decree make the deceased sole owner of the policies? No, Your Honor. The short answer is yes. It said that he was confirmed as owning all right, title, and interest in the policy. But that didn't mean that it revoked the beneficiary designation. The Cassidy case was careful to point out a distinction between a division of community property and the alteration of status as a beneficiary designation. And that's precisely what happened in this case. He may have received all right, title, and interest, but the judgment did not, in addition to that, change any beneficiary designation. Well, I saw a tension in the settlement agreement. This excerpts the record between 91, where as you say, it says it does not automatically cancel the rights of a spouse as beneficiary of the other spouse's life insurance policy. But then we get to excerpts of record page 94, and it says, all right, title, and interest, and again, all rights of the spouse's life insurance policy. And then it says, all right, title, and interest, all of the respondent's retirement pension plans, or other deferred benefits in respondent's name, including but not limited to L.A. Why would this be considered a deferred benefit? Well, I don't think it is a deferred benefit, Your Honor, because the insurance policy was in effect since August 2nd, 1998. That's the date that the decedent signed the beneficiary designations, naming my client, Gloria Ortiz, as beneficiary. As a result, it was not a deferred benefit. It was something that was then in effect and had been for seven years at the time of his death, and six years at the time of this judgment. Also, the beneficiary designation was not in his name. It was in my client's name as the intended beneficiary. Now, we have to distinguish what property right, title, and interests are. A right is a separate item from a power. The decedent had a power to change the beneficiary designation. There's no doubt about that. But he didn't do it. My client, on the other hand, had no right, title, or interest in the policy because she had a mere expectancy. Status as a beneficiary designation is not a recognizable right, nor is it a power, a privilege, or an immunity. It is a mere expectancy. The Sandrowski case tells us that. So he had the power to change the beneficiary. And let's say he intended to do so but then died before, which may be close to what happened. But let's say it's very clear that he is planning to change it and just on his way to the lawyer's office to change it, he gets run over by a car. What's the consequence of that under California law? Well, with those narrow facts, we really can't give an answer because it could have been that the decree was entered just moments before that hypothetical began. And he was on his way immediately to change the beneficiary. Okay. Let's assume that. Say it again, please. As you say, let's say he just got the decree and he's walking away from the courthouse and planning to stop by his lawyer's office to immediately exercise the power he now has to change the beneficiary. He can't change it before the decree, right, because it's in dispute as to who owns the policy. But once the decree is entered, he immediately sets out to the lawyer's office and on his way there, he crosses the street carelessly and gets run over by a truck and dies. But before he, as he sets out, he calls the lawyer and says, I'm on my way over. Fix the paper so I can change the designation. So it's clear what it is he intends. California law requires two elements in such a situation. Number one, a clear manifestation of intent. And in his honors hypothetical, we clearly have that. The second aspect is that the decedent do everything reasonably possible in his power under the circumstances complying insofar as possible with the requirements of the insurer to effect the change. And in this narrow hypothetical where he had just moments after the decree was entered in which to do those two things, I think that's pretty close. And that would probably constitute a reasonable effort and satisfy California's rule of substantial compliance with the rule of the insurance company. But I would like to point out one thing. The decedent was not prevented from changing the beneficiary designation before the decree was entered. There was a temporary restraining order in effect which prohibited him from doing so. But until he tried and failed to get relief from that temporary restraining order, we can't say that he made every reasonable effort under the circumstances to bring about the change and comply with the insurer's requirements. That's the distinction. Was a restraining order still in place after the decree was entered? No, Your Honor. The restraining order expired when a final judgment allocating the property was entered on December or November 15, 2004. I see. So you're suggesting that he could have changed it even before then by getting relief from the temporary restraining order. He could have tried, and he probably would have failed because the case had child support issues involved. But if he is going to, if the other side is going to take the position that he was barred even before the decree, I respectfully disagree with that. He could have tried and then failed before he would have exhausted every reasonable possible thing he could have done. But the point of this case is that the decree was entered in November of 2004. The decedent died in June of 2005. His divorce lawyer told him expressly and in writing that he better take care of his insurance beneficiaries in February of 2005. He knew that he had to do that because he told her that he would, and yet he nonetheless did nothing. He lived for another four months. He was physically able to go get married again and go on a honeymoon, but he still didn't have his beneficiary designation changed. Thank you. You want to serve the rest of your time for rebuttal? Unless there's any other question, Your Honor. Yes, I'd like this issue about community property of the four days. I notice that you sort of conceded that it could be about 6% of the proceeds. Yes, Your Honor. California law is clear that anything that accrues to either spouse because of his or her time, skill, or effort while the parties are married is community property. Yes, but here we have a situation. We have the Ventura County case, the California case examining leave and other benefits in retirement context that it's remuneration from past services. Thus, if he used his vacation time or leave, his wages compensating him for such time were earned prior to the marriage, and Graziella would have no community interest in any of his proceeds at all. Well, that's exactly my position, Your Honor, because none of the decedent's time, skill, or effort earned the money that paid the premium for the June coverage. Everything was earned before the May 28th date of marriage. Except for the last days of May, and he took vacation in his honeymoon, but it was a result of his time and effort that he earned those days. So wouldn't Graziella be entitled to at least 6.5 percent of the insurance proceedings under a community property law? Well, Your Honor, I'm prepared to concede that for purposes of our proceedings. You are. Thank you. That makes it very easy. Thank you. We'll hear from the other side. Thank you. Good morning, Your Honors. If the Court please, John Galle for the appellee, appellee Graziella Ortiz. First, if I may address the issue that appellant raised, that Deputy Ortiz had the ability to attempt to remove the restraining order preventing him from changing the beneficiary of his life insurance.  That's absurd. The temporary restraining order remains in place until the final judgment is entered. No one can remove the restraining order until there has been a decision as to the judgment and the distribution of the property, and that wasn't done until February. Well, he hadn't really married Graziella before then because he was still married to Gloria, right? So it wouldn't have made any sense for him to try to change it before the divorce became final. I mean, he couldn't marry somebody else, right? But once that happened, he had four months in which to change the designation, and he didn't. Well, let's talk about what happened in those four months, Your Honor. The final judgment was entered February 18th of 2005. He was married May 28th of 2005, and he was killed in the line of duty on June 24th of 2005. What happened in February? February 18th of 2005 was when the final judgment was entered in this matter. It was even in appellant's papers, he cites to the letter to Jerry Ortiz's counsel, telling him that he should change the beneficiary. That was in February of 2005, after the final judgment was entered. He could not have done that before, so he didn't have six months to change it. He only had four months from that point in time to the time of his untimely death. Between February of 2005 and the time of his death, he was preparing to get married. He got married, he went on his honeymoon, he was still working. Now, let's think about what a human being would be doing and would be thinking at that point in time. He's not thinking that, my gosh, the first thing I have to do is change the beneficiary of my life insurance policy, when he believed that the order applied to it anyway, and the lower court believed it did. Why did he believe that? Did he have a letter of counsel telling him, don't worry, you don't need to change it because the decree took care of it? Did he have anything like that? No, Your Honor, he didn't have that. The record shows the exact opposite, that his counsel verbally told him he had better change the beneficiary, and in the exit letter, the same counsel reminded him to do it. What he had in the exit letter, Your Honor, is what I would refer to as a belt and suspenders letter from his counsel. It's something that would be sent out whenever any case would be closed to say, just in case, do this. At that point, there's certainly then, there is no dispute that he had You make it sound so cheap, but there's a good reason why those things are put in those letters, and that is to tell clients to do just that. I mean, it doesn't strike me as something very time consuming. He could have changed the designation. He could have simply removed Gloria. If he had done that, he would have become, his state would have become the beneficiary of this. I mean, he didn't have to substitute Gloria. He wasn't sure he was getting married, or he had doubts, or said, I want to wait until she's actually my wife to change it. Then he could have simply removed Gloria from the policy. He could have done that, right? He could have retained the policy and actually struck the name out, and that would have been something. Or he could have written a letter to the insurance company or asked his lawyer to notify the insurance company. Any of those things would have been, probably, been sufficient. That's true, Your Honor. Pick up the phone, call the lawyer, send a letter to the insurance company saying, pull Gloria off. Well, let's go back a little bit, Your Honor, if we will. Let's talk about what led up to this point in time. He had been through a very contentious divorce. He had finally gotten to the point where he had been relieved, he'd been freed from that relationship. He was about to start a new relationship. That letter from his counsel, again, it's to remind him to do something. In his mind, it's, okay, I'm going to do it, but look, I've got to do these things. I'm going to get married. I'm happy again. I have a new life. Let me start over. He didn't have the opportunity in those four months to do that. Cutting against that position that you state is the record here, that at the time she verbally asked him to do this, what was his reply? After I leave here, I'm going right away to change the beneficiary. I'm paraphrasing. Isn't that the record? That was the testimony of Deborah Carfrae. And it was not contradicted. It was not, Your Honor. So that's the record. But that's the record. But let's talk about human nature, if we may. If the Court please. When he does that, he thinks about it, he's a deputy, he's on duty, he goes to work, and he's still thinking about what his plans are for the future. Now, let me just briefly mention human nature here. We are criticizing him for not immediately doing something that requires quite a bit of paperwork, frankly. In the Sheriff's Department, to do anything, you have to sign things at least five or six different times, and I can say that because I'm a reserve. It's just the nature of dealing with a bureaucracy, and he's been on the Sheriff's Department for a number of years, so he knows that. Everything is complicated. Nothing is easy. He only had four months to do this in which this period of time he was planning for his marriage. If this is something that is so crucial, and we're going to criticize him and take the benefits away from the three individuals that he truly loved, then let's talk about timing here. The appeal in this case was filed some 15 or 16 months ago. Last week, 14 months after this appeal was filed, appellant made an urgency motion to add documents to the record that had previously been part of evidence that had been admitted to trial. 15 months had gone by before an urgency motion was made. Is that not human nature? There's no excuse for that. There's nothing in that timeframe that would justify that. In this case, there are plenty of things, human things to justify the delay by Deputy Ortiz in trying to change the beneficiary. So I'm having some difficulty understanding your position. Let's say he had done what he planned to do, or what you claim he planned to do, or what the district judge seems to have done. I'm not quite sure what the district judge did here. What would have been the consequence of that if he had carried through in his intention? If he had carried through in his intention in changing the beneficiary, I think the end result would have been what the court did, and that was that the beneficiaries of his life insurance policy would have been Graciela Ortiz, Jerry Ortiz, and Jacob Ortiz, because the evidence that was presented at the trial, all of the evidence that was presented at the trial, showed that those were the three most important people in his life. Those were the three people in his life that he wanted to make sure were taken care of. Now, the two sons, right, are sons, Gloria's sons? One is Gloria's son, and the other is the son from a previous marriage. Okay. So while he's married to Gloria, he does not make them beneficiaries of the policy. Even though they were and stood to him in exactly the same relationship as they stand now. Correct. Now, I mean on the date of his death. So why do we assume that if he had changed the policy, if he carried through in his intention, what is in the record to suggest that he would have changed the policy to add Graciela and two boys? Why wouldn't he have just added Graciela? Because the evidence that was presented at trial, Your Honor, was that after, you raise the question, while he was married to Gloria, he didn't change it. But after his marriage to Gloria dissolved, after his relationship with Gloria became so embittered, his mindset changed, and that's what the evidence that was presented at trial, from his family members, from his fellow deputies of the Sheriff's Department, that the people that were most important in his life, again, were Graciela and his two sons. What does this give the indication that he would have changed the, that he intended to change the beneficiaries to have Graciela and the two boys as beneficiaries, as opposed to having just Graciela? Is there any evidence of that? Well, the evidence of that, Your Honor, is the evidence of his relationships with the two boys and with Graciela. Is there a statement made? Well, there were actually, Your Honor, there were several statements made by Jerry to his fellow officers regarding how much he cared about those three individuals in his life, and that he wanted to make sure that they were taken care of. But presumably he cared about the two boys while he was married to Gloria as well. And yet, if he had died while married to Gloria, she would have gotten 100 percent, and the boys would have gotten nothing at all. Presumably he didn't care any less for them then, right? Of course not. Of course he didn't care any less for them then, Your Honor. But, again, this change, as the evidence that was presented at trial showed, that post his relationship with Gloria, his feelings about who he wished to have taken care of financially was clear, and those were the two boys and Graciela. Aren't you much better off arguing that the divorce decree, by giving him possession of the policy, essentially implicitly nullified the beneficiary, made him the beneficiary of the policy, and therefore that goes to his estate and passes by community property, in which case you get it split three ways by Graciela and the two boys. If he were not a beneficiary, or if he himself was a beneficiary, he was a state beneficiary, it would pass, not by community property, by interstate succession to Graciela and the boys, right? Absolutely, Your Honor, but the effect is the same. It's a very different theory, though. One imposes a construct as to what he intended, for which there seems to be no evidentiary support at all. The other one is sort of a legal construct. Do you have any support for the alternative theory? Your Honor, I thank the Court for that argument, and I agree with it. But the end result is the same. The end result is that if he owns it, it goes by interstate succession. The end result is it goes three ways to his two sons and to Graciela. It's an argument that reaches the same result, but do you have any authority for it? The authority is in the order itself, Your Honor. If you're referring to the policy becoming his property, it becomes his property at the time of the judgment. You get to go one step further and say that it becomes his property and essentially nullifies the beneficiary designation. Absolutely. That's a major step. Is it California case law that suggests that that's what happens? Well, Your Honor, I think that when the policy became his property as a result of the judgment, the settlement agreement, if you want to call it that, for it not to be nullified would make no sense. It would have made it a moot act at that point in time. Okay. Thank you.
judges: Kozinski, Aldisert, Nelson